IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No. 3:17-CV-241-J-32JBT |
| Plaintiff, | |
| vs. | |
| CRST INTERNATIONAL, INC./CRST EXPEDITED, INC., | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR
ALTERNATIVELY TO TRANSFER THIS CASE
TO THE NORTHERN DISTICT OF IOWA AND
ACCOMPANYING MEMORANDUM OF LAW**

## Introduction

Defendants CRST Expedited, Inc. ("Expedited") and CRST International, Inc. respectfully move as follows to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(3) for improper venue.  Alternatively, Defendants ask the Court to transfer this case to the Northern District of Iowa, Cedar Rapids Division, which is the appropriate venue under 42 U.S.C. § 2000e-5(f)(3), the governing venue provision.

Plaintiff Equal Employment Opportunity Commission ("EEOC"), filed this action under the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991, alleging claims of disability discrimination and retaliation against Expedited with

1

regard to Leon Laferriere ("Laferriere"), who is a resident of this District but is not a party to this case.

Defendant Expedited, headquartered in Cedar Rapids, Iowa, employs two-person driving teams on its long-haul trucks so that the trucks can be operated for more than the individual 14-hour daily driving maximum. Sleeping accommodations are provided in the truck cab. Driving teams stay on the road for weeks at a time.

Mr. Laferriere applied for a position with Expedited as a team driver, but he informed CRST that he would need to have an emotional support dog on board the truck with him because he suffers from Post-Traumatic Stress Disorder ("PTSD"). The EEOC contends that Expedited violated the ADA by failing to accommodate Mr. Laferriere's needs by not allowing him to have an emotional support dog with him on the truck. The EEOC also claims that, by not hiring Mr. Laferriere, Expedited discriminated against him because of his disability and retaliated against him because of his request for an emotional support dog. (Amended Complaint ¶¶ 12-19.)

Venue is not proper in this District. The ADA specifically incorporates by reference the venue provision found in Title VII. *See* 42 U.S.C.A. §§ 12117, 2000e-5(f)(3). "The venue provisions of § 2000e–5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and that the more general provisions of § 1391 are not controlling in such cases." *Pinson v. Rumsfeld*, 192 Fed.Appx. 811, 817 (11th Cir. 2006). Section 2000e–5(f)(3) provides:

> [A]n action may be brought in any judicial district in the State [1] in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are

maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

As explained in more detail below, the events giving rise to the EEOC's ADA claim did not occur in this District. All decisions with respect to Mr. Laferriere's employment application were made at Expedited's Cedar Rapids, Iowa headquarters in the Northern District of Iowa. The case law applying § 2000e-5(f)(3) holds that the location where a job applicant received notice of not being hired is not relevant to venue in a case alleging, as here, an unlawful refusal to hire. Defendants' employment records are also maintained at Expedited's headquarters in the Northern District of Iowa.  Moreover, if Mr. Laferriere had been hired by Expedited, he would have been assigned to Expedited's Oklahoma City terminal, one of Expedited's four terminals which operate as the "home bases" of Expedited's trucks.  Mr. Lafferiere would not have worked in this District except incidentally if his truck happened to pass through the District to make a delivery or pick-up.  Thus, under the three relevant factors under § 2000e-5(f)(3), venue is not proper in this District.

As an alternative to dismissal, Defendants request under 28 U.S.C. § 1406(a) that the Court transfer this case to the United States District Court for the Northern District of Iowa, Cedar Rapids Division, where this lawsuit could have been brought.

## MEMORANDUM OF LAW

### Relevant Facts

Expedited is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. (Karen Carlson Decl., ¶ 4; ECF Doc. No. 7.)[1]

On or about May 6, 2015, Mr. Laferriere submitted an online application for a position as an over-the-road driver with Expedited. (Nichole Moreland Decl., ¶ 4; ECF Doc. No. 8.) Mr. Laferriere's application was received and reviewed by an Expedited recruiter, Nichole Moreland. (*Id.*, ¶ 5.) Ms. Moreland works for Expedited at its headquarters in Cedar Rapids, Iowa. (*Id.*, ¶ 2.)

As part of Expedited's driver training program, driver applicants without experience must first attend driving school to earn a Commercial Driver's License ("CDL"). (*Id.*, ¶ 7.) After successful completion of driving school and orientation at a CRST facility, the applicant is hired by Expedited. (*Id.*) The newly hired driver is then required to drive with another, more experienced lead driver to complete on-road training. (*Id.*)

When Mr. Laferriere applied for employment with Expedited, he was not an experienced truck driver and did not have a CDL. (*Id.*, ¶ 10.) Mr. Laferriere signed a Pre-Employment Driver Training Agreement with Expedited on May 26, 2015, and attended a driving school in Jacksonville, Florida, that is not affiliated with Expedited, to obtain his CDL. (*Id.*, ¶ 11.)

---

[1] This Court's scheduling order with respect to this motion to dismiss the amended complaint permits the parties to refer to the declarations they filed with respect to the original motion to dismiss without the need to refile them.  ECF. Doc. No. 24.

During the application process, Ms. Moreland was informed by Mr. Laferriere that he needed his emotional support dog to accompany him on the truck. (*Id.*, ¶ 8.) Ms. Moreland worked out a plan with Mr. Laferriere that would allow his brother, who is an experienced truck driver, to work for Expedited and train Mr. Laferriere during his 28-day on-road training period. (*Id.*, ¶ 9.) Ms. Moreland communicated with Mr. Laferriere via email and telephone from her office in Cedar Rapids, Iowa. (*Id.*, ¶ 13.)

After Mr. Laferriere completed his training, Expedited learned that his brother had decided not to work for Expedited. (*Id.*, ¶ 12.)  Expedited's Manager of Capacity Development, Marcus Schneider, who also works at Expedited's Cedar Rapids headquarters, contacted Mr. Laferriere in an attempt to work out an alternate plan. (*Id.*, ¶ 12; Marcus Schneider Decl., ¶¶ 5-6; ECF Doc. No. 9.)   Mr. Laferriere was ultimately provided a bus ticket home from Jacksonville, Florida until arrangements could be made. (*Id.*, ¶ 6.)   Mr. Schneider communicated with Mr. Laferriere via email and telephone from Expedited's Cedar Rapids headquarters. (*Id.*, ¶ 7.)

Ultimately, Mr. Laferriere was not hired by Expedited.  (*Id.*, ¶ 8.)  However, if Mr. Laferriere had been hired by Expedited, he would have attended new driver orientation in Oklahoma City, Oklahoma. (*Id.*)   If Mr. Laferriere would have successfully completed orientation, he would have then been dispatched onto a truck for over-the-road training from Oklahoma City. (*Id.*)  Mr. Laferriere's driver manager, who would have been his immediate supervisor, would have been based in Cedar Rapids, Iowa. (*Id.*, ¶¶ 9-10.)

Mr. Laferriere filed an administrative charge with the EEOC's office in Milwaukee, Wisconsin, asserting that Expedited had violated the ADA by not hiring him because of his

need for an emotional support dog. (Carlson Decl., ¶ 9.)  His administrative charge was sent to Expedited's office in Cedar Rapids, Iowa by the EEOC's Milwaukee office which investigated the charge. (*Id*., ¶ 10.) Expedited had no contacts with the EEOC's office in this District with respect to Mr. Laferriere's ADA charge.  (*Id*., ¶ 11.)

## Argument

### I.        Venue is Improper in This District.

The plaintiff has the burden to establish that venue is proper. *Home Ins. Co. v. Thomas Indus., Inc.,* 896 F.2d 1352, 1355 (11th Cir. 1990). Although the allegations of plaintiff's complaint must be accepted as true in determining whether venue is proper, the Court may consider facts outside the complaint if plaintiff's allegations are contradicted by defendant's declarations. *Bell v. United Air Lines, Inc.,* Case No. 11-61393-CIV, 2011 WL 11048116, at *1 (S.D. Fla. Nov. 30, 2011) (*citing Wai v. Rainbow Holdings,* 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004)).

The EEOC cannot establish that venue is proper in this District under any of the three criteria of § 2000e-5(f)(3):

(1)      The alleged unlawful employment practice occurred in the Northern District of Iowa where all the decisions relating to Mr. Laferriere's employment application were made.

(2)      All of Expedited's records with respect to Mr. Laferriere's employment application are maintained in the Northern District of Iowa.

(3)      If Mr. Laferriere had been hired by Expedited, he would have been assigned to a truck operating from Expedited's terminal in Oklahoma City.  Any contact

that Mr. Laferriere would have had with this District would have been incidental and no different from his contact with many other Districts where his driving for Expedited might have taken him.

Although the EEOC conceded in its brief opposing Defendants' motion to dismiss the EEOC's original complaint that the above three factors determine the proper venue in an ADA case under§ 2000e-5(f)(3),[2] the EEOC nevertheless submitted exhibits and referred to facts relating to Expedited's general business contacts with Florida and this District which have no connection to any of the relevant three venue factors.  *See* Pl. EEOC's Response & Mem. of Law in Opp. To Def's Motion To Dismiss or Transfer ("EEOC Br."), ECF Doc. No. 21, at 3-4.[3]  The EEOC's reference to these facts should be disregarded as irrelevant.

The EEOC's argument that its choice of forum should be given weight is defeated by the fact that it chose an improper forum. Moreover, the EEOC office that investigated and is now prosecuting this case is located in Milwaukee, Wisconsin, not in this District.   Mr. Laferriere filed his ADA charge in the EEOC's Milwaukee office, and the EEOC chose to investigate his charge from the Milwaukee office and to have its counsel from its Milwaukee and Chicago offices litigate this case.   (Melissa Lawent Decl. ¶¶ 3-4; ECF Doc. No. 22; Amended Compl., ECF Doc. No. 19, at 7-9 (listing EEOC's counsel in this case).)

---

[2] "Title VII includes its own venue, provision, 28 U.S.C. § 2000e-5(f)(3), which supersedes the general venue provision of § 1391."

[3] The general facts recited by the EEOC include Expedited's distribution centers in Florida, Expedited's effort to recruit drivers in Florida, and Expedited's relationship with the J-Tech Institute driving school in Jacksonville, which Mr. Laferriere attended.  (EEOC Br. 3-4).

**A.    The Allegedly Unlawful Employment Practice Occurred in Cedar Rapids, Iowa.**

**1.    The Decisions Concerning Mr. Laferriere's Employment with Expedited Were Made in Cedar Rapids, Iowa.**

Courts have long construed 2000e-5(f)(3) to provide for venue in the district where the decisions constituting the alleged unlawful practice occurred. *See Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 663 (D.D.C. 1982), which held that venue was proper in Maryland and not in the District of Columbia where the case was filed because "the decisions which are said to have wrongfully denied the plaintiff promotions, light duty work, training opportunities and equal pay all took place in the defendants' Hyattsville, Maryland service center." Although plaintiff performed some work in D.C., the decision to assign him that work was made at the Hyattsville, Maryland service center. *Id. See also Moore v. City of Kankakee*, Case No. 14-cv-5440, 2015 U.S. Dist. LEXIS 66951 (N.D. Ill. May 22, 2015), which held that under § 2000e-5(f)(3) "[t]he plain language of this prong focuses on 'the place where the decisions and actions concerning the employment practices occurred,' not the location where a plaintiff received notice of Defendant's conduct or suffered from its effects." *Id.* at *4. The court in *Moore* explained that venue under § 2000e-5(f)(3) cannot be based on the plaintiff's residence:

> Plaintiff's argument—which effectively shifts the statute's focus from the workplace to Plaintiff's residence—is unsupported by the plain language of the statute. Moreover, taken to its logical extreme, his notice argument would create venue anywhere where a plaintiff received a termination phone call or email— again, an outcome that extends venue beyond the plain language of the statute.

*Id.* at *5.

The EEOC alleges that Expedited discriminated against Laferriere by refusing to hire him and retaliating against him on the basis of his disability and request for permission to have

an emotional support dog on his truck. (Am. Compl., ¶¶ 14-16.)   As set forth above, Mr. Laferriere submitted an online application to Expedited. The application was received and reviewed by Expedited's recruiter, in Cedar Rapids, Iowa. All communications with Mr. Laferriere originated from Expedited's office in Cedar Rapids, Iowa. All decisions made by Expedited with respect to Mr. Laferriere were made in Cedar Rapids, Iowa. The driving school attended by Mr. Laferriere in Jacksonville was an independent training facility not affiliated with Expedited, and in any event it has no connection to the EEOC's allegation of an unlawful employment practice.

The EEOC alleges generally that Expedited committed unlawful employment practices in Jacksonville and Fort Myers, Florida. (*Id.*, ¶¶ 2 & 14)   However, the EEOC alleges no specific facts supporting that conclusory allegation.  EEOC alleges that Mr. Laferriere attended the driving school in Jacksonville, but admits that he successfully completed his instruction at the school and received his CDL.   (EEOC Br. 2.) Thus, Mr. Laferriere's attendance at the driving school is irrelevant to the EEOC's ADA claim.   The same is true of the EEOC's allegations concerning Mr. Laferriere's psychiatrist located in Lee County, Florida.  The EEOC does not contend that Expedited denied that Mr. Laferriere is afflicted with PTSD.

The EEOC's allegations here are similar to the facts of *Pritchett v. Paschall Truck Lines, Inc.*, 714 F. Supp. 2d 1171 (M.D. Ala. 2010). In *Pritchett*, the plaintiff was an Alabama resident who was hired by a trucking company located in Kentucky. *Id*. at 1172. While traveling on a truck in Alabama, plaintiff made a harassment complaint by telephone to a dispatcher in defendant's Kentucky offices. *Id*. at 1173. Plaintiff alleged that "the actions giving rise to her retaliation claim occurred in Alabama because she made a phone call from

Alabama to a dispatcher for [defendant] that was never returned." *Id*. at 1174. The court held the plaintiff "may only prove venue by proving that the alleged retaliation occurred in Alabama" and held that venue was appropriate only in Kentucky: "The alleged retaliation is a decision to withhold all future job assignments as a result of [plaintiff's] reports of alleged sexual harassment. . . .  The decision to act in a retaliatory manner would have been made by [the defendant] at [the defendant's] location in Murray, Kentucky." *Id*. at 1175.

Other decisions in this Circuit similarly hold that the location of an allegedly unlawful employment practice is where the employer made the relevant decisions or took the pertinent actions. In *Lasher v. Day & Zimmerman Int'l, Inc.*, No. CIV.A. 1:05-CV-02643, 2006 WL 1518877, at *2–3 (N.D. Ga. May 30, 2006), the court held that, because plaintiff complained about harassment to the company's president who worked exclusively out of South Carolina, and all of plaintiff's contacts with the president would have taken place in South Carolina, the "unlawful employment practice" occurred in South Carolina, not Georgia, notwithstanding the plaintiff's summary assertions that "several of the incidents of harassment occurred in Georgia."

Similarly, in *Dubovik-Sileo v. Holder,* Case No. 12–80351–CIV, 2013 WL 3928225 (S.D. Fla. 2013) the plaintiff alleged racial and national origin discrimination based on the FBI's failure to hire him for a position in Chicago. *Id.* at *3. All applicants for the position, including plaintiff, used an online automated hiring management system to apply. *Id.* at *4. The decision not to consider plaintiff for the position was made by an FBI Human Resources Specialist in West Virginia. *Id.* The records relating to the position were kept in West Virginia.

*Id.* Under these circumstances, the Court found that there was no basis for venue in the Southern District of Florida. *Id.* at *5.

### 2. The EEOC's Reliance on the "Effects" of Expedited's Hiring Decision Is Legally Wrong.

In its brief opposing Expedited's first motion to dismiss, which was mooted by the EEOC's filing of its Amended Complaint, the EEOC ignored the decisions discussed above holding that unlawful employment practices occur where the defendant employer made the employment decisions alleged to be unlawful. Instead, the EEOC relied primarily on a Ninth Circuit decision—*Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493 (9th Cir. 2000)—which the EEOC inaccurately described as holding generally that venue is proper under § 2000e-5(f)(3) in any district in which the "effects" of the allegedly unlawful employment practices were felt. (EEOC Br. 6-7.) The EEOC's brief neither described the facts in *Passantino*, which bear no resemblance to this case, nor accurately stated the Ninth Circuit's actual holding, which was based on the plaintiff's many years of employment by the defendant in the district in which she filed suit for sex discrimination in the defendant's denial of promotions to the plaintiff.

In *Passantino*, the venue issue was addressed on the defendant's appeal from the final judgment after a jury trial in which the plaintiff was awarded $3.1 million in compensatory damages plus substantial punitive damages. The plaintiff had been employed by the defendant consumer products company for 18 years and was its Western Regional Manager.  Plaintiff was originally based in San Francisco, but was permitted to relocate to Tacoma, Washington. The defendant requested that plaintiff maintain a home office in Tacoma, which she did. Plaintiff claimed that she had not been promoted to higher management positions because of

her sex.   When plaintiff complained of discrimination, she was offered different positions which would have been demotions. The defendant argued that venue was proper only in New Jersey where it was headquartered and where the promotion decisions in question had been made.   However, the Ninth Circuit rejected that argument because of the plaintiff's long employment with the defendant in Washington State:

> In general, the effect of Title VII's venue provision is to allow suit in the judicial district in which the plaintiff worked or would have worked. . . ,
>
> Thus, the statute itself and analogous case law suggest that venue should be found
> where the effect of the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in that practice is implemented. . . .
>
> Had Passantino been wrongfully discharged or subjected to a hostile work environment, she could have sued in the district in which she worked. Nothing in the text or history of the statute's venue provision suggests that a different rule should apply in failure-to-promote cases. Plaintiffs unlawfully denied a promotion, like those discharged, feel the effects of their injury where they actually work.

*Id*. at 504-505.

Thus, *Passantino's* holding is limited to plaintiffs who were employed by the defendant when the allegedly unlawful employment practices occurred and were not promoted or were discharged as a result of those practices.   The holding is not, as the EEOC contends, that in any Title VII or ADA case venue is proper wherever the "effects" of the allegedly unlawful employment practices were felt.   The holding does not apply to cases, such as this one, where the plaintiff was never employed by the defendant.   That limitation was made clear in subsequent applications of *Passantino* in the Ninth Circuit.

In *Davidson v. Korman*, Case No: C 09-1695 SBA, 2010 WL 3515760 (N.D. Cal. Sept. 8, 2010), the plaintiff, who claimed that her employer had retaliated against her because she

had complained of racial discrimination in her workplace, contended that venue was proper in the Northern District of California where she resided rather than in the Eastern District of California where she worked. Citing *Passantino*, plaintiff argued that she felt the "effects" of the defendant's alleged retaliation where she resided. The district court rejected the plaintiff's "reliance on an out-of-context quotation from the *Passantino* decision" because "venue should be found where the effect of the unlawful employment practice is felt: *where the plaintiff works*, and the decision to engage in that practice is implemented." *Id.* at *3, quoting *Passantino*, 212 F.3d at 505 (emphasis added by district court).

Similarly, in *Soliman v. L-3 Communs. Corp.*, No. C 08-04838 WHA, 2008 WL 5383151 (N.D. Cal. Dec. 24, 2008), the district court rejected plaintiff's argument, based on *Passantino*, that his residence in San Francisco established venue in the Northern District of California, because that is where he felt the effects of defendants' refusal to hire him: "Under plaintiff's expansive reading of the venue provision, anyone who applies for and is denied employment from anywhere in the country may hale the employer to the plaintiff's home district to litigate a Title VII action—even if the employer has no further connection with the district." The district court "reject[ed] plaintiff's virtually limitless interpretation of the provision." *Id.* at *5.

District courts in other circuits have refused to follow *Passantino*. The district court in *Whipstock v. Raytheon Co.*, Case No. 07-11137, 2007 U.S. Dist. LEXIS 58500 (E.D. Mich. Aug. 10, 2007), found no ambiguity in the first prong of § 2000e-5(f)(3) (proper venue in the district "in which the unlawful employment practice is alleged to have been committed") that would allow the "effects" of an employment decision to establish venue in the plaintiff's place

of residence from which he had sought the job in question, communicated with the defendant,

and was informed that he would not be hired:

> Unlike the Ninth Circuit, this Court finds that Title VII's venue provisions are not ambiguous. . . .  The plain language of the first prong of the statute states that venue is proper in "[a]ny judicial district in the State in which the unlawful employment practice is *alleged to have been committed. . . .*" 42 U.S.C. § 2000e-5(f)(3) (emphasis added). The language of the statute does not provide for venue where the effects of the alleged unlawful employment practices are felt. Nor does a straightforward and commonsense reading of the statute imply that venue is proper in any district where the alleged unlawful employment practice is implemented or its effects are felt. Therefore, under the plain, unambiguous language of the statute, venue is proper only where the unlawful employment practice is alleged to have been committed, regardless of where its effects are felt. As a result, venue in this case is proper only where Plaintiff alleges Defendant made the decision not to hire him because of his wife's national origin.

*Id*. at *7-8.

The district court in *Whipstock* also stressed the factual differences between

*Passantino*, a denial-of-promotion case, and a decision not-to-hire as in *Whipstock*:

> . . . Plaintiff's reliance on *Passantino* is misplaced because this case is factually dissimilar. *Passantino* was a failure to promote claim, where in the present case, Whipstock was not hired at all. The Court in *Passantino* held that plaintiffs unlawfully denied a promotion, like those discharged, feel the effects of their injury where they actually work. Here, however, Whipstock did not work in Michigan. If he had received the job, he would have been required to move to Pennsylvania to work. Moreover, *Passantino* has never been applied in a case where the plaintiff is not already an employee of the defendant, nor was *Passantino* decided on residency alone.

*Id*. at *10-11.

*See also Russell-Brown v. Univ. of Fla. Bd. of Trs.*, Civil Action No. 09-2479 (SRC),

2009 U.S. Dist. LEXIS 114787 (D.N.J. Dec. 7, 2009): "This Court finds that *Passantino's*

holding is at odds with the plain language of 42 U.S.C. § 2000e-5(f)(3), which clearly

defines the bases for venue and which is unambiguous. The Ninth Circuit's broadening of the scope of the venue provision has no basis in the statutory language."

A district court in this Circuit—the Southern District of Alabama in *Harrington v. Howard Transportation Co.*, Case No. 12-0078-WS-C, 2012 U.S. Dist. LEXIS 72427 (S.D. Ala. May 23, 2012), a truck driver case similar to this one—also held that *Passantino* applies only to promotion cases, not decisions not to hire:

> [T]he *Passantino* Court carefully specified that an employment decision is "felt" only "where the plaintiff works, and the decision ... is implemented." 212 F.3d at 505. This portion of *Passantino* extends only to existing employees, and it covers situations such as the one at issue there: a decision made in one state about an existing employee in another state. Since the plaintiff characterizes the defendant's employment decision as a "refusal to hire," (Doc. 8 at 5; accord id. at 6), and admits that she never worked for the defendant, she cannot invoke this prong of the first statutory basis.

*Id*. at *11.

Because the *Harrington* court found that *Passantino* as a promotion case is distinguishable on its facts from a hiring case, the court concluded that it did not need to decide whether to follow *Whipstock* and *Russell-Brown* in holding that *Passantino* had misconstrued § 2000e-5(f)(3). *Id*. at *12 n. 6.

The other two cases upon which the EEOC relies in arguing that the allegedly unlawful employment practices occurred in part in this District are just as inapplicable here as *Passantino*. In *McDonald v. American Federation of Musicians*, 308 F. Supp. 664 (N.D. Ill. 1970), black musicians had been required to pay a transfer fee to join the predominantly white musicians union affiliate. After the predominantly white and predominantly black affiliates merged, the black members who had paid transfer fees sued to recover them. (The fees were initially refunded, but the union then required them to be repaid.) The defendant union argued

that venue was improper in the Northern District of Illinois because the decision not to refund the fees occurred in Florida and the union's principal office was in New York.  However, the court found that venue was proper in the Northern District of Illinois because "[t]he plaintiffs live and work in this district and were required to repay the fees here." *Id*. at 670.  The EEOC ignores this holding.  (EEOC Br. 7.)  As with *Passantino*, McDonald is inapplicable in this case because it was not a refusal-to-hire case, and the plaintiffs sued where they worked and where they had paid the discriminatory fees they sought to recover.

Similarly, *Wegeng v. Papa John's USA, Inc.*, Civil No. 05-636-GPM, 2006 WL 127259 (S.D. Ill. May 2, 2006), has no bearing here because it is also not a refusal-to-hire case. Plaintiff Janine Wegeng claimed that the defendant had retaliated against her because her husband, co-plaintiff John Wegeng, employed by the defendant in the Southern District of Illinois, had made an internal racial discrimination charge against the defendant. The court held that Janine Wegeng had stated a valid Title VII retaliation cause of action and that venue over her claim was proper in in the Southern District of Illinois where John Wegeng had worked for the defendant and where his protected activity—his internal racial discrimination charge—had occurred.  *Id*. at *1.  The EEOC's brief ignored these facts.[4]  (EEOC Br. 7.)

Therefore, under the first prong of § 2000e-5(f)(3).Expedited's allegedly unlawful refusal to hire Mr. Laferriere occurred in the Northern District of Iowa, not in this District.

---

[4] The *Wegeng* court's opinion is very brief and does not discuss the underlying facts.  The relevant facts can be found in the plaintiffs' amended complaint at 2006 WL 791626.

**B.**     **Expedited's Employment Records Relating to Mr. Laferriere Are Maintained in Cedar Rapids, Iowa.**

Expedited's employment records concerning Mr. Laferriere are not maintained or administered in this District. Expedited maintains employment records for all employees and applicants, including Mr. Laferriere, at its headquarters in Cedar Rapids, Iowa.  (Carlson Decl. ¶ 7.)

The EEOC does not contend that Mr. Laferriere's employment records are located in this District but instead refers to the records of the driving school Mr. Lafferiere attended, and the records maintained by his psychiatrist. (EEOC Br. 9-10.) The EEOC cites no case holding that such records are "employment records" under § 2000e-5(f)(3).

Instead, the cases applying this prong of § 2000e-5(f)(3) construe "employment records" to mean the defendant employer's documents relating to its employment relationship with the plaintiff.  *See Bell v. Woodward Governor Co.*, 2004 U.S. Dist. LEXIS 12314, at *5-6 (N.D. Ill. July 1, 2004)  (referring to "the open position request, job posting, job applications, job offer, and other employment records that document the Global Continuous Improvement Manager position," which was the job in question); *Johnson v. United Airlines, Inc.*, 2013 U.S. Dist. LEXIS 10581, at *9-10 (N.D. Ill. Jan. 25, 2013) (personnel files and employer's records pertaining to its internal investigation of plaintiff's discrimination claim); *Harrington v. Howard Transp., Inc.*, 2012 U.S. Dist. LEXIS 72427, at *4 (plaintiff's employment application).

Therefore, under the second prong of § 2000e-5(f)(3), venue is proper only in the Northern District of Iowa where Expedited's employment records pertaining to Mr. Laferriere are maintained and administered.

17

**C.    If Mr. Laferriere Had Been Hired by Expedited, He Would Have Been Based at Expedited's Oklahoma City Terminal.**

If Mr. Laferriere had been hired by Expedited, he would have attended orientation in Oklahoma City, Oklahoma.  Following his successful completion of orientation, Mr. Laferriere would have been assigned to a truck and a lead driver for on-road training beginning in Oklahoma City. (Schneider Decl. ¶ 8.).  Mr. Laferriere's driver manager, who would have been his immediate supervisor, would have been based in Cedar Rapids, Iowa. (*Id.*, ¶ 9.)  Although Mr. Laferriere's truck may occasionally have been routed through this District, he would not have been based in this District, and plaintiff's residence is irrelevant when determining the statutory requirements for venue. *Robertson v. Donahoe*, 2012 WL 2917992, at *2 (M.D. Fla. 2012); *Moore v. City of Kankakee*, 2015 U.S. Dist. LEXIS 66951 at *5.

The *Harrington* truck-driver case decided in the Southern District of Alabama is directly on point.  The district court held, first, that the phrase defining the third prong of § 2000e-5(f)(3)—the judicial district in which the aggrieved person would have worked—refers to the plaintiff's "principal place of employment," not anywhere where his work might lead. *Harrington v. Howard Transp., Inc.*, 2012 U.S. Dist. LEXIS 72427, at *4.  The court explained this means that "there can be only one proper venue under the third basis for venue set forth in Section 2000e-5(f)(3), no matter how many other districts in which the plaintiff might also have worked." *Id*. at *5.  The court rejected the plaintiff's argument, identical to the EEOC's contention here, that it is likely that the plaintiff would have worked in the forum district "at some point":

> [Plaintiff's] only evidence is that it is "possible" she "might" have been assigned routes passing through this district from time to time. (Doc. 8 at 3-4; Doc. 6, Skipper Declaration, ¶ 14). What is "possible" is far short of what is "likely," and what "might" happen is far short of what "would" happen.

*Id*. at *10.

The EEOC cites only one case to support its argument that venue in this District is proper because, "[a]s a traveling truck driver Mr. Laferriere would have worked in several different forums, including this District."  (EEOC Br. 10).  The case upon which the EEOC solely relies—*Kempf v. Mitsui Plastics*, No. 95-cv-4258, 1996 U.S. Dist. LEXIS 718 (N.D. Ill. Jan. 24, 1996)—actually supports dismissal or transfer of the EEOC's case.  Once again, the EEOC ignores relevant facts.  The plaintiff in *Kempf* was employed by the defendant as a traveling saleswoman.  Plaintiff claimed that the defendant provided more favorable pricing to male salespersons.  Unlike this case, *Kempf* is not a refusal-to-hire case.  Plaintiff was employed by the defendant as its Regional Sales Manager for the Midwest. Moreover, although plaintiff was responsible for several Midwest states, she "worked out of her home in Illinois." *Id*. at *2. Thus, her principal workplace was in Illinois.  The EEOC does not and cannot argue that, if he had been hired by Expedited, Mr. Laferriere's principal workplace would have been in this District.  Moreover, after finding venue proper in the Northern District of Illinois, the *Kempf* court transferred the case to the Southern District of New York where the defendant was headquartered.  *Id*. at *3-11. Other relevant factors outweighed the plaintiff's choice of forum, particularly since "[t]his suit is connected to Illinois only in that Kempf's residence (and office) and part of her territory are here."  *Id*. at *7.

If Expedited had hired Mr. Laferriere, his principal employment location would not have been in this District.  Thus, the third prong of § 2000e-5(f)(3) does not support venue in this District.

## II.   Alternatively, This Case Should Be Transferred to the Northern District of Iowa, Cedar Rapids Division.

Because venue is not proper in the Middle District of Florida, the EEOCs Complaint can properly be dismissed under Fed. R. Civ. Proc. 12(b)(3). *See e.g. Bell,* 2011 WL 11048116, at *2 (dismissing ADA case for improper venue); *see also Carter v. Sec'y, Dep't of Homeland Sec.*, Case No. 6:08-cv-48-Orl-31KRS, 2008 WL 1805486, at *1 (M.D. Fla. Apr. 18, 2008) (same).

As an alternative to dismissal, defendant requests that the Court transfer venue to the Northern District of Iowa, Cedar Rapids Division, a district and division where this action could have been brought. *See* 28 U.S.C. § 1406(a): "The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." The decision whether to dismiss or instead to transfer a case under § 1406(a) is left to the district court's discretion. *See Carter*, 2008 WL 1805486, at *1 (*citing Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 433, 434 (11th Cir. 1983)). The district court in *Moore v. City of Kankakee* explained that:

> Transfer to the [district where the case could have been brought] also is in the interests of justice, as it would conserve the court's and the parties' resources. *See Giles v. Cont'l Cas. Co.*, 2010 U.S. Dist. LEXIS 10206, 2010 WL 481233, at *5 (S.D. Ill. Feb.5, 2010) (explaining that courts prefer transfer because it "avoids the 'time-consuming and justice-defeating technicalities' required to refile a case in

[another] venue") (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)).

*Moore v. City of Kankakee*, 2015 U.S. Dist. LEXIS 66951 at *8.

Here, it is in the interest of justice to transfer this case to the Northern District of Iowa and avoid the need for the EEOC to dismiss and refile there. Moreover, the Northern District of Iowa is clearly the proper venue under 42 U.S.C. § 2000e-5(f)(3), and it is also a convenient forum. Expedited's headquarters are located there, as are the relevant employment records and Expedited's prospective witnesses.

## Conclusion

Defendants CRST Expedited, Inc. and CRST International, Inc. ask the Court to dismiss Plaintiff EEOC's Complaint. In the alternative, Defendants CRST Expedited, Inc. and CRST International, Inc. request under 28 U.S.C. § 1406(a) that the Court transfer this case to the United States District Court for the Northern District of Iowa, Cedar Rapids Division.

## Certificate of Conferral Pursuant to Local Rule 3.01(g)

Counsel for Defendants CRST Expedited, Inc. and CRST International, Inc. hereby certifies that counsel for Defendants have conferred with counsel for Plaintiff EEOC, pursuant to Local Rule 3.01(g), and that Plaintiff does not consent to the relief sought in this Motion.

Dated: June 15, 2017                              Respectfully submitted,

By: /s/Eric L. Hearn
Charles M. Trippe, Jr.
Trial Counsel
Florida Bar No. 069760
Eric L. Hearn
Trial Counsel
Florida Bar No. 0094269
Joni A. Poitier
Florida Bar No. 22861
Moseley, Prichard, Parrish, Knight & Jones
501 West Bay Street
Jacksonville, Florida 32202
Telephone:  (904) 356-1306
Facsimile:  (904) 354-0194
Email: cmtrippe@mppkj.com
Email: elhearn@mppkj.com
Email: japoitier@mppkj.com

John M. Mathias Jr.
Jenner & Block
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2917
Facsimile: (312) 527-0484
Email: jmathias@jenner.com

Admitted *Pro Hac Vice*

Kevin J. Visser
Simmons Perrine Moyer Bergman PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
Telephone: (319) 366-7641
Facsimile: (319) 366-1917
Email: kvisser@simmonsperrine.com

Admitted *Pro Hac Vice*

ATTORNEYS FOR DEFENDANT
CRST EXPEDITED, INC. AND CRST
INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I hereby certify on June 15, 2017, I filed a copy of the foregoing using the CM/ECF

system, which will send notification of such filing to all attorneys and parties of record.

/s/ Eric L. Hearn

ATTORNEY FOR DEFENDANT
CRST EXPEDITED, INC. AND CRST
INTERNATIONAL, INC.

23