# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

v.                                     Case No. 3:17-cv-241-J-32JBT

CRST INTERNATIONAL, INC. and
CRST EXPEDITED, INC.,

    Defendants.

## **O R D E R**

This Americans With Disabilities Act case is before the Court on Defendants CRST Expedited, Inc. and CRST International, Inc.'s (collectively, "CRST") Motion to Dismiss for Improper Venue or Alternatively to Transfer This Case to the Northern District of Iowa. (Doc. 28). Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a response in opposition. (Doc. 29).

## I.     BACKGROUND

Leon J. Laferriere is a United States military service veteran whose psychiatrist prescribed an emotional support dog to help him cope with his post-traumatic stress and mood disorders. (Doc. 19 ¶ 15). In May 2015, Laferriere

applied online for a position as a long-haul truck driver with CRST, headquartered in Cedar Rapids, Iowa. (Doc. 21-1). As part of CRST's driver training program, applicants without experience must first attend driving school to earn a commercial driver's license. (Doc. 8 ¶ 7). Once the applicant completes driving school and orientation at a CRST facility, he is hired and then must drive with another, more experienced lead driver to complete on-the-road training. (Id.).

Nichole Moreland, a CRST recruiter for driver development, conducted a phone interview from Cedar Rapids with Laferriere, who lives in Fort Myers, Florida. (Id.). When Laferriere applied, he was not an experienced truck driver and did not have a commercial driver's license; therefore, after he signed a Pre-Employment Driver Training Agreement, CRST issued Laferriere a conditional offer of employment and sent him to complete a driver training course at J-Tech Institute ("J-Tech") in Jacksonville as a step in the hiring process.[1] (Doc. 19 ¶ 16; Doc. 32 at 3-4; Doc. 21-7; Doc. 8 ¶ 10). After completing training at J-Tech, Laferriere would continue to orientation at CRST's Oklahoma City, Oklahoma facility. (Doc. 21-7).

Before he attended driver training, Laferriere informed Moreland that he wanted to bring his service dog on the truck. (Doc. 8 ¶ 8). Moreland explained

---

[1] CRST partners with J-Tech to train its Florida driver candidates. CRST states that J-Tech is not affiliated with CRST.

2

that CRST could not force Laferriere's lead driver to take the dog on the truck when it came time to complete his over-the-road training. (Id.). Conveniently, however, Laferriere's brother is an experienced truck driver, and Moreland arranged for him to work for CRST and train Laferriere during the over-the-road training period. (Id. ¶ 9). After Laferriere completed his driver training, Moreland learned that his brother had decided not to work for CRST, and she contacted Marcus Schneider, CRST's Director of Capacity Development, to formulate an alternate arrangement. (Id. ¶ 12). On June 12, 2015, Schneider contacted Laferriere from Cedar Rapids to devise a plan; however, when they could not immediately develop one, CRST provided Laferriere with a bus ticket home from Jacksonville to Fort Myers, until arrangements could be made. (Doc. 9 ¶ 6). Ultimately, CRST did not hire Laferriere. (Id. ¶ 8). However, had Laferriere successfully completed orientation in Oklahoma City and been hired, he would have been dispatched onto a truck for over-the-road training from Oklahoma City and supervised by a driver manager located in Cedar Rapids. (Id.).

In August 2015, Laferriere filed a Charge of Discrimination with the Milwaukee, Wisconsin Area Office of the EEOC, alleging that CRST discriminated against him on the basis of disability, denied him a reasonable accommodation, denied him hire, and retaliated against him in violation of the ADA. (Doc. 21-1; Doc. 22). Following the failure of informal conciliation efforts,

3

the EEOC filed this lawsuit, seeking individualized relief on Laferriere's behalf and injunctive relief that will benefit other employees. In the Amended Complaint, filed on May 17, 2017, the EEOC alleges that CRST has engaged in unlawful employment practices in Jacksonville and Fort Myers in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a), and Section 503 of Title V of the ADA, 42 U.S.C. § 12203. (Doc. 19 ¶ 14). Because the unlawful employment practices were allegedly committed within this District, the EEOC argues that venue here is proper. (Id. ¶ 2).

On June 15, 2017, CRST filed a motion to dismiss or transfer, arguing that the EEOC has failed to allege that: any unlawful employment practices occurred in this District; CRST maintains employment records here; or Laferriere would have worked out of this District. (Doc. 28). In response, the EEOC argues that venue here is proper, as the complaint contains allegations stating that: CRST's unlawful employment practices partly occurred in this District; relevant documents are maintained here; and it is likely that Laferriere would have worked in this District.[2] (Doc. 32).

---

[2] In the Amended Complaint, the EEOC only alleges venue is proper under the first prong, but its response addresses the first three prongs of the statute. (Doc. 19 ¶ 2; Doc. 32).

4

## II. LAW

The ADA, as amended, borrows its jurisdiction and venue provisions from Title VII of the Civil Rights Act of 1964. See Bell v. United Air Lines, Inc., No. 11-61393-CIV, 2011 WL 11048116, at *2 (S.D. Fla. Nov. 30, 2011). Title VII's venue provision states, in relevant part, that the appropriate venue for Title VII claims is:

> any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e–5(f)(3). "The venue provisions of § 2000e–5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and that the more general provisions of § 1391 are not controlling in such cases." Pinson v. Rumsfeld, 192 F. App'x 811, 816-17 (11th Cir. 2006) (citing Stebbins v. State Farm Mut. Auto. Ins. Co., 413 F.2d 1100, 1102–03 (D.C. Cir. 1969) (per curiam)).

Once the defendant challenges venue under Rule 12(b)(3), Fed. R. Civ. P., the plaintiff has the burden of showing that venue in the forum is proper. Id. (citation omitted). "The court must accept all allegations of the complaint as

5

true, unless contradicted by the defendants' affidavits." Bell, 2011 WL 11048116, at *1 (citations omitted). "When an allegation of the complaint is challenged, the court may examine facts outside of the complaint to determine whether venue is proper." Id. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. Id.

### III. ANALYSIS

#### A. Propriety of Venue

The first statutory basis for venue focuses on the district in which the unlawful practice was committed. See 42 U.S.C. § 2000e–5(f)(3). CRST argues that venue here is not proper under this prong, as the allegedly unlawful employment practices occurred in Iowa. (Doc. 28 at 8-16). In support, CRST provides the Declarations of Nichole Moreland and Morris Schneider. (Docs. 8 & 9); see Dubovik-Sileo v. Holder, No. 12-80351-CIV, 2013 WL 3928225, at *3 (S.D. Fla. July 29, 2013) (noting that it is appropriate for the court to consider facts from supporting affidavits relative to the venue issue). Moreland explains that all of her contact with Laferriere, including her review of his online application, discussions regarding the driver training program, and communications regarding the plan for Laferriere's brother to drive with him and his dog, occurred from her office in Cedar Rapids. (Doc. 8). Similarly, Schneider conducted all of his communications regarding alternate arrangements for Laferriere from his office in Cedar Rapids. (Doc. 9).

6

The EEOC does not dispute these facts. Instead, the EEOC alleges that the unlawful employment practices in this case "consist of a series of events that involve conduct both in Iowa and in Florida." (Doc. 32 at 5). The "events" in Florida include: Laferriere's review of the job description for the position; his completion of his job application; participation in telephone and email communications with CRST; attending driving school in Jacksonville at CRST's direction; requesting a reasonable accommodation while in Florida; and objecting to CRST that its no-pet policy was discriminatory.³ (Id. at 6) (citing Doc. 19 ¶¶ 14-21). The EEOC also argues that "other significant decisions and events occurred in Florida," including Laferriere's treatment for the disability at issue. (Id. at 8).

The Eleventh Circuit has not considered this prong of the venue statute in Title VII cases.⁴ However, courts examining this aspect of the statute have

---

³ While the EEOC cites the Amended Complaint to support its list of events allegedly occurring in Florida, the complaint itself does not specifically allege the location in which most of these acts occurred. The complaint alleges that Laferriere's psychiatrist treated him in Florida, (Doc. 19 ¶ 15), that CRST sent him to driver training in Florida, (Id. ¶ 16), and that CRST retaliated against Laferriere by rescinding its offer of employment and sending Laferriere home to Fort Myers from driving school in Jacksonville, (Id. ¶ 18). No other allegations specify the location in which the acts occurred, leaving it to the Court to piece together the locations from exhibits submitted in connection with the prior motion to dismiss and other supporting exhibits.

⁴ The EEOC concedes as much, (Doc. 32 at 14), and neither party has cited Eleventh Circuit authority that addresses prong one of the statute. As of the date of this Order, neither party has filed any supplemental authority suggesting the Eleventh Circuit has opined on the issue. Therefore, the Court

7

noted that "[t]he plain language of this prong focuses on 'the place where the decisions and actions concerning the employment practices occurred,' not the location where a plaintiff received notice of [defendant's] conduct or suffered from its effects." Moore v. City of Kankakee, No. 14-CV-5440, 2015 WL 2455116, at *2 (N.D. Ill. May 22, 2015) (citing Hayes v. RCA Serv. Co., 546 F. Supp. 661, 664 (D.D.C. 1982); Cox v. Nat'l Football League, 1997 WL 619839, at *2 (N.D. Ill. Sept. 29, 1997); Kapche v. Gonzales, 2007 WL 3270393, at *4 n.4 (S.D. Tex. Nov. 2, 2007) ("Under the plain language of section 2000e–5(f)(3), the location where improper discriminatory conduct occurs rather than where its effects are felt is where venue properly lies.")). In fact, in another refusal to hire case in this Circuit, the court dismissed a case for improper venue, noting that "Plaintiff has neither alleged nor produced any evidence suggesting that the practice of denying her the job position in Chicago took place in the Southern District of Florida." Dubovik-Sileo, 2013 WL 3928225, at *4 (emphasis added). Thus, the court focused on the location in which the unlawful practice took place, not where the plaintiff was located when she received the information. Similarly, in another refusal to hire case, the court examined the first prong and noted that "under the plain, unambiguous language of the statute, venue is proper only where the unlawful employment practice is alleged to have been

---

must consider other persuasive authority in determining the proper venue in this case.

8

committed, regardless of where its effects are felt." Whipstock v. Raytheon Co., 2007 WL 2318745, at *3 (E.D. Mich. Aug. 10, 2007). The Whipstock court concluded that venue was only proper where the plaintiff alleged the defendant "made the decision not to hire him because of his wife's national origin." Id. Other courts in this Circuit have reached similar conclusions in cases involving decisions not to hire. See, e.g., Harrington v. Howard Transp., Inc., No. CIV.A. 12-0078-WS-C, 2012 WL 1899850, at *3 (S.D. Ala. May 23, 2012) (venue was improper under prong one because plaintiff only alleged the unlawful practice was committed in the district because its effects were "felt" there).

In support of its argument for keeping this case in the Middle District of Florida, the EEOC relies heavily on Passantino v. Johnson & Johnson Consumer Products, a case in which the Ninth Circuit explained that "[i]n general, the effect of Title VII's venue provision is to allow suit in the judicial district in which the plaintiff worked or would have worked . . . venue should [also] be found where the effect of the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in that practice is implemented." 212 F.3d 493, 504-05 (9th Cir. 2000). The Eleventh Circuit has not addressed Passantino's analysis of prong one, and only two district courts in the Circuit have truly grappled with it. See Harrington, 2012 WL 1899850, at *3; Shipley v. Hypercom Corp., No. 1:09-CV-0265-CAP-RGV, 2009 WL 10664453, at *4-5 (N.D. Ga. May 28, 2009), report and recommendation

9

adopted, No. 1:09-CV-265-CAP-RGV, 2009 WL 10664670 (N.D. Ga. June 16, 2009).[5] The Court is persuaded by the reasoning in Harrington v. Howard Transportion, Inc., another refusal to hire case, which distinguishes Passantino because the relevant portion of that case addressing prong one

> extends only to existing employees, and it covers situations such as the one at issue there: a decision made in one state about an existing employee in another state. Since the plaintiff characterizes the defendant's employment decision as a "refusal to hire," and admits that she never worked for the defendant, she cannot invoke this prong of the first statutory basis.[6]

Harrington, 2012 WL 1899850, at *3 (citing Soliman v. L–3 Commc'ns Corp., 2008 WL 5383151 at *5 (N.D. Cal. 2008) (refusing to extend Passantino to allow "anyone who applies for and is denied employment from anywhere in the country [to] hale the employer to the plaintiff's home district to litigate")). The Harrington court concluded that because the plaintiff did not fall within

---

[5] Shipley agrees with Passantino, finding that the "defendant's contention that an unlawful employment practice occurs only where the challenged employment decision is made [was] unpersuasive." Shipley, 2009 WL 10664453, at *4. The court concluded that venue was appropriate in the Northern District of Georgia because it is the judicial district where the plaintiff worked and where the unlawful employment practices occurred. Id. at *5. However, Shipley is distinguishable from this case because the court heavily relied on the fact that the plaintiff was actually employed by the defendant and worked in the district. This case involves a decision not to hire; Laferriere never worked for CRST in this District, and thus Shipley is inapposite.

[6] Notably, the EEOC does not address Harrington in its response. (Doc. 32).

10

Passantino, it need not decide whether to follow that decision. Id. at *3 n.6. Here, the Court also finds that Passantino does not apply, as this case involves a decision not to hire, as opposed to an employment action against an existing employee.

The EEOC's argument that "significant decisions and events," which comprise the allegedly unlawful employment practice occurred in Florida establish venue here, is unavailing. "The plain language of § 2000e-5(f)(3) permits a suit to be brought in any judicial district in the state in which the unlawful employment practice was committed, not in any judicial district in the state where the effects of the unlawful employment practice were felt." EEOC v. Store Opening Sols., Inc., No. 3:09-CV-63-JTC, 2010 WL 11515507, at *2 (N.D. Ga. Mar. 8, 2010) (citing Russell-Brown v. Univ. of Fla. Bd. of Trs., 2009 WL 4798230, at *2-3 (D.N.J. Dec. 7, 2009)); Thomas-Williams v. MGM Grand Detroit LLC, 2009 U.S. Dist. LEXIS 27699, at *15 (E.D. Mich. Mar. 31, 2009). While the EEOC alleges generally that CRST committed unlawful employment practices in Jacksonville and Fort Myers, (Doc. 19 ¶¶ 2, 14), no specific facts support this conclusory allegation. The EEOC has neither alleged nor produced any evidence suggesting that the practice of denying Laferriere the position in Oklahoma City took place in the Middle District of Florida. See Dubovik-Sileo, 2013 WL 3928225, at *4 (dismissing case for improper venue). The acts the EEOC references that occurred in Florida, such as Laferriere's psychiatric

11

treatment for the disability, the request for an accommodation, and his opposition to CRST's no-pet policy, are not unlawful employment practices; they merely comprise the events leading up to the allegedly unlawful employment practice. Rather, it was the decision not to hire Laferriere because of his disability that is allegedly unlawful and took place in Cedar Rapids. By incorporating Laferriere's location and actions, the EEOC has improperly shifted the statute's focus from the district in which the unlawful act was committed to the place where Laferriere lived when applying for the job and where he eventually received notice of the allegedly unlawful act.[7] See Moore, 2015 WL 2455116, at *2. Although some courts have considered "material events" related to the underlying claims of discrimination that contributed to the ultimate decision relevant to the inquiry, see, e.g., Jones v. Hagel, 956 F. Supp. 2d 284, 289 (D.D.C. 2013), this inquiry is not appropriate under the facts of this case. Therefore, the EEOC cannot establish that venue here is proper under the first prong.

The Amended Complaint only alleges venue is applicable in this District under the first prong; the EEOC fails to allege facts stating that the employment records are maintained in this District, or that this is the judicial

---

[7] The EEOC concedes that Laferriere's residence in Fort Myers does not establish venue in this District and states that it is not making this argument. (Doc. 32 at 10 n.3).

district in which Laferriere would have worked but for CRST's unlawful acts. (Doc. 19 ¶ 2). Therefore, the Court need not discuss these aspects of venue.[8]

**B.     Transfer or Dismissal**

Having found venue improper, the Court now considers whether to dismiss the case or transfer it. Section 1406(a) permits transfer to a venue where an action could have been brought and where it is in the interests of justice. 28 U.S.C. § 1406(a). The interests of justice generally require transferring an action brought in an improper venue instead of dismissing it. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466–67 (1962). The decision whether to dismiss or instead to transfer a case under § 1406(a) is left to the sound discretion of the district court. See Carter v. Sec'y, Dep't of Homeland Sec., No. 608-CV-48-ORL-31KRS, 2008 WL 1805486, at *1 (M.D. Fla. Apr. 18, 2008) (citing Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 433, 434 (11th Cir. 1983) (per curiam)).

While CRST asserts that dismissal is appropriate, it alternatively requests that the Court transfer venue to the Northern District of Iowa, Cedar Rapids Division. (Doc. 28 at 20). The EEOC requests that the Court transfer the case to Iowa if the Court finds that venue is not proper here. (Doc. 32 at 18).

---

[8] Despite its failure to allege venue in the Amended Complaint under these prongs of the venue statute, the EEOC addresses them in the response to the motion to dismiss or transfer. Even if the Court were to consider the EEOC's arguments, they are unpersuasive.

As the EEOC's claims could have been brought in the Northern District of Iowa under § 2000e-5(f), the Court will transfer this action there.

Accordingly, it is hereby

**ORDERED:**

1. Defendants CRST Expedited, Inc. and CRST International, Inc.'s Motion to Dismiss for Improper Venue or Alternatively to Transfer This Case to the Northern District of Iowa (Doc. 28) is **GRANTED in part and DENIED in part**. Defendants' request that the action be dismissed for improper venue is **DENIED**, but their alternative request that the action be transferred is **GRANTED**.

2. Pursuant to 28 U.S.C. § 1406(a), this case is hereby **TRANSFERRED** to the United States District Court for the Northern District of Iowa, Cedar Rapids Division.

3. The Clerk should terminate all pending motions and deadlines, and after transfer has been effectuated, close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 1st day of November, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

sj

14

Copies:
Counsel of record